Arnold B. GRIFFIN,
Petitioner–Appellant,

v.

Steven DAVIES and Attorney General
of the State of Kansas,
Respondents–Appellees.

No. 90–3021.

United States Court of Appeals,
Tenth Circuit.

March 29, 1991.

and Roy Beeson.

versity of Kansas School of Law, Lawrence, Kan., for petitioner-appellant.

John K. Bork, Asst. Atty. Gen., Topeka, Kan., for respondents-appellees.

Before McKAY, MOORE and ANDERSON, Circuit Judges.

McKAY, Circuit Judge.

Arnold B. Griffin appeals the denial of his petition for a writ of habeas corpus. Petitioner contends that the trial judge's admonitions exerted duress on a prosecution witness such that the witness was precluded from making a free and voluntary choice as to his testimony, thereby violating the petitioner's right to due process under the fourteenth amendment.

I.

In 1981 petitioner was convicted in Kansas state court on two counts of aggravated robbery and one count of aggravated battery of a law enforcement officer. The convictions arose out of the robbery of two convenience stores and the shooting of a Wichita, Kansas police officer.

Petitioner was charged along with two co-defendants. At petitioner's trial, the prosecution called Joseph McMahan, one of the co-defendants, as a witness. Mr. McMahan had previously entered a guilty plea before the presiding judge at petitioner's trial.

In response to the prosecutor's question about who accompanied him during the robbery of the first convenience store, Mr. McMahan replied, "No comment." Trial transcript at 108. The trial judge instructed him to answer the question. Mr. McMahan stated he could not do so.

The judge excused the jury. He threatened the witness with a one-year prison term for criminal contempt for refusing to answer the prosecutor's question and warned that he would find him in contempt again if he continued to refuse.[1] Mr.

David J. Gottlieb (C.A. Beier with him, on the brief), Kansas Defender Project, Uni-

---

1. The judge said to Mr. McMahan:
   Before I find you in criminal contempt of Court and sentence you to one year in the county jail consecutive to the sentence you are serving at Hutchinson, I will offer you the opportunity to explain why, then Mr. Skinner will ask you the question again and if you don't answer it again, I will find you in criminal contempt again and give you a second year and it will be consecutive to the first year

McMahan explained that he was drunk on the evening the robberies occurred and could not remember who was present. The judge told Mr. McMahan that he could relate this to the jury, but warned him of the penalties for perjury and about the earlier statements Mr. McMahan had made upon entering his guilty plea. *Id.* at 108–09.

Before bringing the jury back, the prosecutor asked to examine Mr. McMahan as a hostile witness. In granting this request, the judge noted that he had handled the guilty plea and that Mr. McMahan was making inconsistent statements because he had not previously stated that he was too drunk to remember the evidence. The judge then sentenced him to one year in the county jail for refusal to answer the prosecutor's question. *Id.* at 109–11.

The jury returned and Mr. McMahan continued with his testimony. As he had explained to the trial judge, Mr. McMahan testified that he was under the influence of alcohol and did not remember if the petitioner was with him during the first robbery. Mr. McMahan recalled, however, pointing a gun at the store clerk, taking him to the back room, and ordering him to lie down. He also remembered that the other co-defendant, Ernest Bennett, was with him on that evening.

At this time, the judge again excused the jury. He concluded that Mr. McMahan was deliberately misleading the court and found him guilty of two more counts of criminal contempt resulting in two more years in the county jail. The witness insisted that he was not lying to the court. He explained that the information about Mr. Bennett and about forcing the clerk to the back room was not from his own memory but from the evidence presented when he entered his guilty plea.[2]

The jury returned to the courtroom and direct examination continued. Once again,

Mr. McMahan stated that he could not remember who was present during the first robbery other than co-defendant Bennett. Upon further questioning, the witness conceded that he was "not real sure" whether petitioner was in the car used during the robberies and that petitioner "could have been" with him the entire evening. When the prosecutor asked if he picked up petitioner at a party earlier that evening which Messrs. McMahan and Bennett attended, he replied, "I believe so." *Id.* at 119–21.

On cross-examination, defense counsel focused on the ambiguities in Mr. McMahan's testimony. The witness acknowledged that it could have been someone else other than petitioner who was with him and that he did not know who was present. *Id.* at 124.

Petitioner was convicted on all three counts and sentenced to concurrent terms of ten years to life for each offense. On direct appeal, petitioner alleged that the trial judge's intimidation of Mr. McMahan had violated his right to due process. Petitioner argued that the threats denied him of his right to present witnesses in his own behalf without undue government interference. The Kansas Supreme Court affirmed the conviction.

Petitioner then filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (1988). On December 19, 1989, the United States District Court for the District of Kansas denied relief. The court ruled that the Kansas trial judge had not violated petitioner's due process right to present a defense because the threats were directed at a prosecution witness and did not prevent petitioner from offering witnesses in his own behalf. Although the warnings were excessive, the district court concluded that the error was harmless and

and that will be consecutive to the sentence imposed over in Hutchinson and we will keep playing this game until you decide to answer the question or until you have a life sentence in the county jail. Now that we clearly understand each other, I will give you the opportunity to tell me why you can't answer.
Trial transcript at 108–09.

2. At this point, the judge became concerned that Mr. McMahan's drunken condition, if true, might negate the intent necessary for his guilty plea. He directed that Mr. McMahan's attorney appear the next morning to determine whether the alleged intoxication would remove an intent element for robbery.

did not contribute to petitioner's conviction. This appeal followed.

## II.

We begin our analysis by noting that petitioner's argument is based on the sixth amendment's guarantee that a criminal defendant "shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor." U.S. Const. Amend. VI. In *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), the Supreme Court interpreted compulsory process to mean not only the right to compel the attendance of witness and to offer their testimony, but also that compulsory process is "in plain terms the right to present a defense.... This right is a fundamental element of due process of law." *Id.* at 19, 87 S.Ct. at 1923.[3]

The Court expanded a defendant's right to present witnesses in *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972). In *Webb*, the trial judge had given an intimidating lecture about the consequences of perjury to the defendant's sole witness resulting in the witness refusing to testify. The Court reversed the conviction because the "threatening remarks ... effectively drove that witness off the stand, and thus deprived the petitioner of due process of law under the Fourteenth Amendment." *Id.* at 98, 93 S.Ct. at 353. The judge's unnecessarily strong admonitions "could well have exerted such duress on the witness' mind as to preclude him from making a free and voluntary choice whether or not to testify." *Id.; see also United States v. Crawford*, 707 F.2d 447 (10th Cir.1983) (noting that substantial government interference with a defense witness' decision to testify violates the defendant's due process rights).

Petitioner contends that *Webb* is applicable to the trial judge's admonitions to Mr. McMahan. He argues that he was denied due process because the judge's threats precluded Mr. McMahan's free and voluntary testimony and effectively drove him off the stand.

Respondent urges us to affirm the district court's ruling that *Webb* does not apply in this case because Mr. McMahan was a prosecution witness. In addition, respondent contends that the petitioner's due process rights were not violated because he cannot show that Mr. McMahan's testimony, absent the trial judge's remarks, would have been both material and favorable to his defense.

## III.

█ To establish a fourteenth amendment due process violation based on the denial of the right to compulsory process, a defendant must establish "more than the mere absence of testimony." *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982). There must be a plausible showing that an act by the government caused the loss or erosion of testimony that was both material and favorable to the defense. *Id.; see also United States v. Hoffman*, 832 F.2d 1299 (1st Cir.1987) (construing *Valenzuela–Bernal* to require a nexus between the challenged government conduct and the defendant's inability to present evidence).

█ We conclude that the judge's threats, although inappropriate and excessive, did not cause the loss of testimony that was material and favorable to the petitioner. Unlike *Webb*, Mr. McMahan proceeded to testify in spite of the warnings about the consequences of perjury and in spite of the three separate contempt of court sentences. Significantly, Mr. McMahan did not alter his testimony to conform to the judge's expectations. *Cf. Anderson v. Warden, Maryland, Penitentiary*, 696 F.2d 296 (4th Cir.1982), *cert. denied*, 462 U.S. 1111, 103 S.Ct. 2463, 77 L.Ed.2d 1340 (1983) (ruling that trial judge successfully pressed defense witness to change testimony). Nor did Mr. McMahan withhold testimony that otherwise would have been available to petitioner. Instead, his statements were consistent with his explanation that he answered "no comment" because

---

**3.** The Court also held that the right to compulsory process applies to the states through the Due Process Clause of the fourteenth amendment. *Id.*

he was too intoxicated to remember whether petitioner was with him on the evening of the robberies and shooting.

■ Petitioner argues that the testimony following the warnings constitutes "a complete collapse of McMahan's material and favorable testimony." Memorandum Brief of Petitioner–Appellant at 13. Petitioner, however, has failed to establish how "no comment" could be construed as favorable testimony.[4] *Cf. Singleton v. Lefkowitz,* 583 F.2d 618, 623 (2d Cir.1978), *cert. denied,* 440 U.S. 929, 99 S.Ct. 1266, 59 L.Ed.2d 486 (1979) (defendant's right to compulsory process was violated where government contributed to unavailability of defense witness whose testimony probably would have revealed defendant's lack of involvement in drug transaction). Moreover, the judge's threats did not cause Mr. McMahan to change his testimony, but resulted in ambiguous and equivocal statements about the petitioner's whereabouts consistent with his explanation when the jury was excused. Upon resuming his testimony after the judge's first warning, Mr. McMahan stated that he did not know if petitioner was with him. After the second warning, he testified that he was "not real sure" who, other than co-defendant Bennett, was in the car that evening. And when asked if petitioner was with him, he replied "it could have been." Similarly, on cross-examination Mr. McMahan testified that, as drunk as he was, it could have been any number of people who were involved in shooting the police officer. Although the severe admonitions could have precluded Mr. McMahan from making a free and voluntary choice of whether to testify, such a result did not occur in this case.[5] Accordingly, petitioner was not denied due process of law.

In light of our ruling that the judge's warnings did not cause the loss or erosion of testimony material and favorable to petitioner, we need not decide whether *Webb* applies to prosecution witnesses. Our decision also precludes an analysis of whether a *Webb* violation can constitute harmless error.[6] We will not undertake to decide issues that do not affect the outcome of a dispute. *See Manning v. Upjohn Co.,* 862 F.2d 545, 547 (5th Cir.1989).

The district court's order is AFFIRMED.

---

4. This refusal to testify was unacceptable. Mr. McMahan had no privilege against compulsory self-incrimination after pleading guilty to two counts of aggravated robbery. *See Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969).

5. A later exchange between the judge and the attorney who represented Mr. McMahan when he entered his guilty plea, *see supra* note 2, supports our conclusion. When asked if Mr. McMahan wanted to change his testimony, the attorney replied:

> I discussed that he was the witness who was testifying and should not let anyone coerce him into making testimony that was not true. I did discuss with him his concern or a concern that we had for his personal safety, and he feels no such concern, that he is not being motivated to lie because he feels he is unsafe. He has no feelings in that matter.

Trial transcript at 160–61.

6. Petitioner also argues that co-defendant Bennett's testimony was coerced when Mr. McMahan returned to his cell and communicated the judge's threats to Mr. Bennett. Petitioner's argument is based on a letter written by Mr. Bennett in 1985 exculpating petitioner.

Petitioner has not demonstrated that the letter is properly before this court. Our review of the record reveals that the Kansas courts denied petitioner's motion for a new trial based on his allegation that the letter was newly discovered evidence. Petitioner does not contend that the ruling was erroneous. Absent this evidence, the trial transcript does not support petitioner's claim that Mr. Bennett's testimony was coerced.