956 F.2d 279
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Rogelio CASTRO, Defendant-Appellant.
 No. 91-3144.
 United States Court of Appeals, Tenth Circuit.
 Feb. 24, 1992.
 
 Before HOLLOWAY, JOHN P. MOORE and BRORBY, Circuit Judges.
 
 
 1
 ORDER AND JUDGMENT*
 
 
 2
 Defendant-appellant Castro appeals his conviction for forcibly assaulting, resisting, opposing, impeding, intimidating or interfering with Jesse Younger in or on account of his performance of official duties as an employee of a United States penal or correctional institution, 18 U.S.C. § 1114, in violation of 18 U.S.C. § 111.
 
 
 3
 * Early one morning in February 1990 Younger, a guard at Leavenworth Federal Penitentiary, entered the cell that Castro shared with Edgar Quan-Guerra. Younger testified at trial that he was looking for the source of some liquor he had discovered in a common area. Younger said that as he entered the cell, Castro jumped him and the two struggled. Their versions of the encounter differed. Castro said he was alone in the cell at the time and he thought Younger was another prisoner trying to harm him. Younger testified, and Castro denied, that Quan-Guerra entered the room during the struggle and struck Younger from behind. Castro allegedly threw a homemade syringe to Quan-Guerra who fled. There was government testimony that Castro was eventually subdued with the help of another guard and that Quan-Guerra was later searched and a razor blade was found in his possession.
 
 
 4
 Castro and Quan-Guerra were charged as codefendants under 18 U.S.C. § 111, but their trials were severed. Quan-Guerra entered into a plea agreement and pursuant to it he pled guilty to illegal possession of a weapon. In exchange, the assault charge was dismissed. A prominent issue on this appeal by Castro concerns the terms of Quan-Guerra's plea agreement with respect to Quan-Guerra testifying at Castro's trial and the prosecuting attorney's conduct when Castro's trial counsel called Quan-Guerra to testify. These facts will be developed later.
 
 
 5
 At trial, Castro presented his defense of mistake and self-defense. He called two inmates, Kennedy and Bagguley, who testified on his behalf. He also attempted to call Quan-Guerra, but the prosecuting attorney objected and stated that if Quan-Guerra testified, "all bets and deals are off," V R. 280, under the plea agreement made with Quan-Guerra. Then after discussions by Quan-Guerra with his attorney, Castro's attorney rested without calling Quan-Guerra.
 
 
 6
 Castro was convicted and was given a 33 month sentence on the § 111 assault charge to run consecutively to another sentence he is serving. Castro appeals, asserting principally claims of error in the government's peremptory challenges which were allegedly made to eliminate members of Castro's ethnic group, ineffective assistance by trial counsel, and government coercion causing Quan-Guerra not to testify for Castro. As part of his ineffectiveness of counsel claim Castro complains of errors, not objected to by his trial counsel, in improper attacks on the credibility of his defense witness Kennedy, inter alia.
 
 II
 
 7
 Castro argues that the peremptory challenge of Ms. Cynthia Lopez removed the only venire member who was of Castro's ethnic background as a Hispanic person, in violation of Batson v. Kentucky, 476 U.S. 79 (1986), which prohibits equal protection violations by systematic exclusion of jurors of one's own race.
 
 
 8
 Batson held that the Equal Protection Clause forbids the prosecution to make challenges to potential jurors solely on account of their race or on the assumption that black jurors as a group would be unable impartially to consider the State's case against a black defendant. Id. at 89. Batson further held that a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's own trial. To establish such a prima facie case, the defendant must first show that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. Id. at 96.
 
 
 9
 Once the defendant makes such a prima facie showing the burden shifts to the State to come forward with a neutral explanation for challenging the jurors of the racial group; the prosecutor must articulate a neutral explanation related to the particular case to be tried. The trial judge then has the duty to determine if the defendant has established purposeful discrimination. Id. at 97-98.
 
 
 10
 The Supreme Court modified these requirements in Powers v. Ohio, --- U.S. ----, 111 S.Ct. 1364 (1991), holding that the race of the complaining defendant and the jurors excluded because of their race need not be the same. Id. at 1373. The Court held that "a defendant in a criminal case can raise the third-party equal protection claims of jurors excluded by the prosecution because of their race ... [and] [t]o bar petitioner's claim because his race differs from that of the excluded jurors would be to condone the arbitrary exclusion of citizens from the duty, honor, and privilege of jury service." Id. at 1373.[1]
 
 
 11
 Castro argues that he and Ms. Lopez are both Hispanics, a recognized racial minority, and that the prosecutor used his peremptory challenge to remove Ms. Lopez, the only venire member who was Hispanic. Castro says that this establishes the first portion of his prima facie case under Batson. Brief of Appellant at 12-13. We disagree.
 
 
 12
 Under the rationale of Powers v. Ohio, it is no longer necessary to demonstrate that the defendant's ethnic group is the same as that of those excluded wrongfully. Nevertheless, the record does not support Castro's assertion that during jury selection "it was determined that one of the jurors was of hispanic origin, Mrs. Cynthia Lopez ..." Brief of Appellant at 3. In fact, later in his brief on appeal Castro says that his trial attorney "failed to cause the record to reflect the race of the potential jurors and he failed to object to the peremptory challenge of the only hispanic on the jury panel, Mrs. Lopez." Brief of Appellant at 4. We find no showing in the record as to Ms. Lopez' ethnic grouping.
 
 
 13
 The assertions of defendant Castro must rest on the surname of Ms. Lopez as evidentiary support. This is not enough to premise a Batson challenge. While the arguably Hispanic surname may suggest a plausible inference, and while racial identity may be clear from appearances at voir dire, we cannot sustain a Batson challenge on conjecture. United States v. Esparsen, 930 F.2d 1461, 1466-67 (10th Cir.1991).
 
 III
 
 14
 Castro further claims that the conduct of his trial attorney was so poor that it amounted to ineffective assistance of counsel. Castro asserts that five separate errors crippled his defense: (1) the attorney failed to view and photograph Castro's cell in order to demonstrate exactly how dark it was at 6:55 a.m. on the morning in question; (2) he failed to object to the prosecution's exclusion of the only prospective juror who was a member of Castro's ethnic group and failed to cause the record to reflect the jurors' ethnic backgrounds and the government's racial motivation in its challenges; (3) he failed to object to the improper attacks on the credibility of the defense witness, Kennedy; (4) he failed to make a timely motion for discovery of the government's interviews of defense witnesses which allowed him to be surprised, and permitted important defense testimony to be undermined, by the introduction of Bagguley's inconsistent statements on cross-examination; and (5) he did not object to the use of the plea bargain by which the prosecution caused Mr. Quan-Guerra not to testify.
 
 
 15
 On consideration of the claims of ineffectiveness made here and the record of this direct appeal, we are convinced that we must follow our general rule on such claims. The preferred avenue for challenging the effectiveness of defense counsel in a federal trial is by a collateral attack under 28 U.S.C. § 2255, except in the rare cases when the record is sufficiently complete to judge the claims in the direct appeal. Beaulieu v. United States, 930 F.2d 805, 806-07 (10th Cir.1991). With respect to each of the claims of ineffectiveness which Castro asserts, like those in Beaulieu, the merits of these allegations cannot be determined on the basis of the trial record alone and must be developed in a § 2255 proceeding if Castro wishes to so proceed. Id. at 808. Our disposition of this appeal is without prejudice to the assertion of such claims in a collateral proceeding under § 2255.
 
 IV
 
 16
 Further, defendant Castro vigorously argues that he was denied fundamental due process under the Fifth Amendment by the government's substantial interference with a defense witness' decision whether to testify, relying upon Webb v. Texas, 409 U.S. 95 (1972), and Washington v. Texas, 388 U.S. 14 (1967), inter alia.
 
 
 17
 Castro's brief argues that he made it clear at a suppression hearing in January 1991 that it was his position that his cell mate and then codefendant, Quan-Guerra, was not present at all during the incident with Officer Younger. (Brief of Appellant at 22-23). Thus, Castro's position disputed the testimony of Younger that Quan-Guerra came into the cell and struck him from behind. Castro further argues that his trial attorney called Quan-Guerra to the stand to testify; that thereupon the prosecutor stated that pursuant to a plea bargain, Quan-Guerra had entered a plea of guilty to a separate charge of possession of a prohibited object, a razor blade shank weapon, in the prison; that the plea bargain provided for dismissal of the charge against Quan-Guerra for participating in the assault on Younger, and "provided Quan-Guerra would not testify at Castro's trial." Brief of Appellant at 23-24.
 
 
 18
 Castro's brief further contends that his trial counsel conferred with Quan-Guerra to tell him about the prosecutor's position during a recess, and then Castro's trial counsel announced that instead of calling Quan-Guerra, Castro would rest and present no more evidence. Brief of Appellant at 24. Castro claims a violation of fundamental fairness and of his constitutional rights by the government's conduct.
 
 
 19
 The government responds that this issue is not proper for review on this direct appeal because it was not properly raised in the trial court or ruled on; and that it was not a threat for a prosecutor to advise a potential witness that he might be prosecuted for perjury if he testified falsely. Brief of Appellee at 21, 25.
 
 
 20
 The record on this issue consists of a brief incident when Castro's trial counsel called Quan-Guerra to testify. At that point the prosecutor requested a bench conference, which was permitted. V R. at 279-280. The prosecutor then referred to a January 1991 appearance before the district judge on two charges against Quan-Guerra, one being the severed count charging Quan-Guerra's participation in the assault on Officer Younger, and the second being for the possession of a prohibited weapon, a homemade shank razor. The prosecutor related the entry by Quan-Guerra of a guilty plea pursuant to a plea bargain under which the charge against Quan-Guerra for the assault was dismissed, and Quan-Guerra entered a guilty plea to the charge of possession of the prohibited weapon. The prosecutor then said that the "condition of the plea bargain was that he [Quan-Guerra] not be called as a witness in this matter. I would like the record to show that the Government has not subpoenaed him or is calling him to testify in this matter, and, thus, by appearing voluntarily in this matter on behalf of the defendant that all bets and deals are off as opposed [sic] to Mr. Quan-Guerra." V R. at 280.
 
 
 21
 The record then shows that the court questioned whether there was anything in the plea agreement that Quan-Guerra not testify. The prosecutor then said that was Quan-Guerra's wish and was made part of the plea bargain "that he not testify in this matter." V R. at 281. The trial judge pointed out that Quan-Guerra could waive that provision. At this point Castro's trial attorney requested a recess to talk with Quan-Guerra through the interpreter. The court noted that the government's position about the plea bargain was "not the way I heard you [the prosecutor] explain the plea bargain to me. The plea bargain was for [Quan-Guerra's] benefit, he didn't have to testify." If he waived it, the judge said he was not sure that the government could charge Quan-Guerra with additional charges. The prosecutor stated that "[o]ur position is that if he breaches the plea agreement along those lines then we can bring these charges against him." VR. at 282-283.
 
 
 22
 The court then granted a 15 minute recess. At the conclusion of it, Castro's trial attorney stated that the defendant rested his case. Quan-Guerra was not called. Id. at 284.
 
 
 23
 The position of the prosecuting attorney obviously presents a very disturbing question. It is clear that the right to offer the testimony of witnesses and to compel their attendance is a fundamental element of due process, and that the Compulsory Process Clause protection is a component of due process. Washington v. Texas, 388 U.S. 14, 17-19 (1967). Moreover where a lengthy and intimidating warning concerning perjury was aimed at one witness who then refused to testify for a defendant, the Court found a due process violation. Webb v. Texas, 409 U.S. 95, 97-98 (1972).
 
 
 24
 However the Court has subsequently held that where a defendant makes no effort to explain what material, favorable evidence would have been provided by a witness he was denied, the defendant failed to establish a violation of the Fifth or Sixth Amendments. United States v. Valenzuela-Bernal, 458 U.S. 858, 874 (1982). In applying the Court's teaching in the Valenzuela-Bernal case, we have noted that to establish such a due process violation the defendant must establish more than the mere absence of testimony: "There must be a plausible showing that an act by the government caused the loss or erosion of testimony that was both material and favorable to the defense." Griffin v. Davies, 929 F.2d 550, 553 (10th Cir.1991).
 
 
 25
 In connection with this constitutional claim, the record does show extremely troubling statements by the prosecutor in the bench conference, obviously threatening disavowal of the plea agreement and prosecution of Quan-Guerra on the assault charge if Quan-Guerra testified for Castro. Nevertheless, there are two deficiencies in connection with this constitutional claim of denial of due process. First, there was no objection made at trial concerning the action of the prosecutor and no ruling on such a claim by the trial judge. Thus we must consider this claim on the more stringent plain error standard. Furthermore, there was no offer of proof or other showing in the record as to what material and favorable testimony of Quan-Guerra might have been given for the assistance of Castro. In these circumstances, the claim as now presented in this direct criminal appeal is deficient and may not serve as a basis for reversal.[2]
 
 
 26
 In sum, we conclude that the present record demonstrates no ground for reversal of Castro's conviction in the instant appeal and the judgment is accordingly AFFIRMED, without prejudice to further post conviction proceedings as provided in this opinion.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 These principles of equal protection analysis have been applied by us in direct criminal appeals. E.g., United States v. Johnson, 941 F.2d 1102, 1107 (10th Cir.1991); United States v. Esparsen, 930 F.2d 1461, 1465 (10th Cir.1991); United States v. Chalan, 812 F.2d 1302, 1313 (10th Cir.1987). The Supreme Court's approach to equal protection claims asserted as a component of Fifth Amendment due process has been precisely the same as to equal protections claims under the Fourteenth Amendment. Weinberger v. Wiesenfeld, 420 U.S. 636, 638 n. 2
 
 
 [2]
 As noted earlier in Part III, this issue is one of the points on which the claim of ineffective assistance is asserted--the failure of the trial attorney to make such an objection or to develop the record on the issue. As our discussion in Part III makes clear, our disposition of this appeal is without prejudice to the prosecution of a post conviction proceeding if Castro wishes, and our determination in this Part IV shall not be construed as a bar to the consideration of this due process issue as a component of the claim of ineffectiveness by Castro