**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 13, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JAMES THOMAS MURPHY,

Plaintiff-Appellant,

v.

PHILLIP D. HYLTON, M.D., Chief of
Neurosurgery, North Kansas City
Hospital, in his individual capacity;
JOHN DOE, Compliance Officer,
North Kansas City Hospital, in his
individual capacity; NORTH KANSAS
CITY HOSPITAL, in its individual
capacity; DAVID CARPENTER, Chief
Executive Officer of North Kansas
City Hospital, in his individual
capacity,

Defendants-Appellees.

No. 07-3337
(D.C. No. 5:07-CV-03074-SAC)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **McCONNELL** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior
Circuit Judge.

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.  This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

James Thomas Murphy, pro se, appeals the dismissal of his action brought under 42 U.S.C. §§ 1981, 1983, and *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), in which he claimed damages for defendants' alleged deliberate indifference to his medical needs. The district court dismissed the case under 28 U.S.C. § 1915A(b)(1) for failure to state a claim for relief. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

Mr. Murphy is an inmate at the United States Disciplinary Barracks at Ft. Leavenworth, Kansas (USDB). In December 2005, he underwent an MRI exam because he suffered from chronic neck pain and numbness on the right side of his body. The following month, he was referred to Dr. Phillip Hylton, Chief of Neurosurgery at North Kansas City Hospital (NKCH), for a physical and diagnosis. During the appointment, Dr. Hylton advised Mr. Murphy that he had a protruding disc at the C3 and C4 vertebrae that was pressing against his spinal cord, and a protruding disc at the C5 and C6 vertebrae. Dr. Hylton recommended surgery, stating, "'we can leave it like this and eventually you will end [up] in a wheelchair since the symptoms have progressed[,] or we could operate to remove the disc.'" R., Vol. 2, Doc. 28, Attach. 1 (Proposed Second Am. Compl.) at 5.

At some point during the exam, Dr. Hylton inquired why Mr. Murphy was in prison. Mr. Murphy had been escorted to the appointment by three military guards, one of whom was armed. Mr. Murphy declined to answer the question,

and Dr. Hylton continued his diagnosis, after which Mr. Murphy decided to have the surgery. Several days later, however, he received a report from Dr. Hylton indicating that "[t]he patient did not respond with the reason for his incarceration upon questioning." *Id.* at 6. This report prompted personnel from USDB to contact NKCH to schedule the surgery. The hospital would not confirm a date, and by the end of March 2006, still without a date, staff at USDB again contacted NKCH. This time they learned that Dr. Hylton would not perform the surgery unless Mr. Murphy disclosed why he was in prison.

Mr. Murphy consulted a physician's assistant at USDB's health clinic, Mitchell Poppe, who advised him not to reveal the information because he risked the consequences of potential prejudices Dr. Hylton might have against certain offenses. Dr. Hylton denied this accusation, explaining that he was simply concerned for the safety of his staff and uncertain how Mr. Murphy would respond to anesthesia. Nevertheless, Mr. Murphy refused to disclose the information, Dr. Hylton refused to yield, and Mr. Murphy was forced to seek treatment elsewhere. After obtaining referrals to two other doctors, he finally underwent surgery in October 2006.

On March 20, 2007, Mr. Murphy filed suit against Dr. Hylton, NKCH, the hospital's compliance officer, and its chief executive officer, all in their individual capacities. Asserting jurisdiction under 28 U.S.C. § 1331, he alleged under *Bivens* that the defendants' deliberate indifference to his medical needs

violated his Eighth Amendment right to be free from cruel and unusual punishment. He also requested that the court appoint counsel.

Pursuant to 28 U.S.C. § 1915A, the district court undertook preliminary screening of the case. On April 23, 2007, the court denied Mr. Murphy's request for counsel, but granted his request to amend his complaint to substitute the correct chief executive officer of NKCH as a defendant. The court then found that the amended complaint failed to allege a basis for jurisdiction under § 1331, or state a viable *Bivens* claim. Consequently, the court ordered Mr. Murphy to show cause, within thirty days, why the amended complaint should not be dismissed.

On May 29, 2007, the district court received Mr. Murphy's response to the show cause order, which sought to amend the complaint a second time. Notwithstanding the court's conclusion that the response was untimely, it proceeded to consider the second amended complaint and held that it still failed to state any cognizable claim for relief. Hence, the court dismissed the case. On appeal, Mr. Murphy argues that he sufficiently alleged an Eighth Amendment claim for deliberate indifference and the court abused its discretion in refusing to appoint counsel.[1]

---

[1] Mr. Murphy also argues that his response was timely under the prison mailbox rule. Given our consideration of the proposed second amended complaint, we do not reach the merits of this issue because it does not affect the outcome of the case. *See Griffin v. Davies*, 929 F.2d 550, 554 (10th Cir. 1991).

**II**

Dismissal for failure to state a claim is a legal question we review de novo. *See McBride v. Deer*, 240 F.3d 1287, 1289 (10th Cir. 2001). We review the dismissal for failure to state a claim "for plausibility in the complaint," *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citation omitted), which we read in the light most favorable to the plaintiff. We accept all well-pleaded, material allegations as true, *see Estelle v. Gamble*, 429 U.S. 97, 99 (1976), mindful that a pro se complaint is to be liberally construed and held to a less stringent standard than formal pleadings drafted by lawyers, *Erickson v. Pardus*, – U.S. – , 127 S. Ct. 2197, 2200 (2007).

Initially, we note that absent from Mr. Murphy's opening brief are any arguments against NKCH, its compliance officer, or its chief executive officer. Any argument he might have raised against these defendants is consequently waived. *See Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 624 (10th Cir. 1998) ("[A]rguments not set forth fully in the opening brief are waived.").

We also note that in his proposed second amended complaint, Mr. Murphy described his action as arising under §§ 1981 and 1983 rather than under *Bivens*. However, his admission that Dr. Hylton "is not a state actor," R., Vol. 2, Doc. 28, Attach. 1 (Proposed Second Am. Compl.) at 2, defeats any such claims. *See Davis-Warren Auctioneers, J.V. v. FDIC*, 215 F.3d 1159, 1161 (10th Cir. 2000)

(recognizing that state action is a prerequisite to bringing a § 1981 claim); *Scott v. Hern*, 216 F.3d 897, 906 (10th Cir. 2000) (recognizing that state action is a prerequisite to bringing a § 1983 claim).

We are thus left to consider whether Mr. Murphy's proposed second amended complaint states a *Bivens* claim. *Bivens* recognized that a plaintiff can recover from an individual federal agent for constitutional violations committed while "acting under color of his authority." 403 U.S. at 389; *see also Carlson v. Green*, 446 U.S. 14 (1980) (extending *Bivens*-type claims to violations of the Eighth Amendment's cruel and unusual punishment clause). However, "[t]o state a *Bivens* action, [a] plaintiff must allege circumstances sufficient to characterize defendants as federal actors." *Romero v. Peterson*, 930 F.2d 1502, 1506 (10th Cir. 1991). And on this score, the proposed second amended complaint contains no allegations to support the contention that Dr. Hylton was a federal actor; instead, it states only that Mr. Murphy saw Dr. Hylton "on an outside medical appointment," R., Vol. 2, Doc. 28, Attach. 1 (Proposed Second Am. Compl.) at 3, and that Dr. Hylton "is not a state actor, prison employee, [or] federal or military employee," *id.* at 2. Based on these allegations, it is simply implausible that Mr. Murphy is entitled to relief because there is no indication that Dr. Hylton is a federal actor. A plaintiff must frame his "complaint with enough factual matter (taken as true) to suggest that he . . . is entitled to relief. Factual allegations must be enough to raise a right to relief above the speculative

-6-

level." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotations and citations omitted). Read liberally and for plausibility, the most that can be said of Mr. Murphy's allegations is that Dr. Hylton was a private physician operating under contract with USDB. But this reading would be purely speculative, and even assuming that Dr. Hylton was a federal contractor, we have previously declined to find federal action based solely on the existence of a contractual relationship, *see Romero*, 930 F.2d at 1507. And because Mr. Murphy fails to allege any other facts tending to show that Dr. Hylton was a federal actor, he fails to draw the requisite nexus between Dr. Hylton and the federal government such that we might say that Dr. Hylton's actions were fairly attributable to the government. Thus, Mr. Murphy's *Bivens* claim fails.

Finally, the district court's refusal to appoint counsel was not an abuse of discretion. *See Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995). The record, Mr. Murphy's pleadings, the complexity of the issues, and the manner in which Mr. Murphy presented them all support the court's decision. *See id.* (discussing factors courts should consider when deciding whether to appoint counsel, including the merits and complexity of the claims, the factual issues

involved, and the litigant's ability to present the claims).

Accordingly, the judgment of the district court is AFFIRMED.

Entered for the Court


Michael W. McConnell
Circuit Judge