**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 8, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SAMUEL NEFTALI ORELLANA-
QUINTANILLA,

 Petitioner,

v.

JEFFREY ROSEN, Acting United States
Attorney General,[*]

 Respondent.

No. 19-9594
(Petition for Review)

_____

**ORDER AND JUDGMENT**[**]
_____

Before **LUCERO**, **HOLMES**, and **EID**, Circuit Judges.
_____

 Petitioner Samuel Neftali Orellana-Quintanilla, a native and citizen of

El Salvador, petitions for review of the decision of the Board of Immigration Appeals

(BIA) dismissing his appeal from the Immigration Judge's (IJ) denial of withholding

_____

[*] On December 24, 2020, Jeffrey Rosen became Acting Attorney General of
the United States. Consequently, his name has been substituted for William P. Barr
as Respondent, per Fed. R. App. P. 43(c)(2).

[**] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

of removal.  Exercising jurisdiction under 8 U.S.C. § 1252(a), we deny the petition for review.

I

Petitioner, who had been previously removed from the United States on multiple occasions pursuant to an order entered in 2000, most recently re-entered the country without authorization in 2008.  In 2018, he was apprehended by the Department of Homeland Security's (DHS) Fugitive Operations Unit.  The DHS detained Petitioner and reinstated the removal order.  When Petitioner said he was afraid to return to El Salvador, he was interviewed by an asylum officer who determined that he had a reasonable fear of persecution.  The case was then referred for withholding proceedings.

At an IJ hearing in May 2019, Petitioner testified that in 2010, two years after his most recent re-entry to the United States, the Mara Salvatrucha (MS-13) gang tried to recruit his brother, Henry, as a member.  "[M]y brother [Henry] had problems with [MS-13].  So that problem started because they wanted to recruit [Henry] into the gang. . . .  And then when [Henry refused] that's when the problems started."  Henry resisted recruitment and fled to the United States.  When MS-13 discovered that Henry "wasn't in El Salvador anymore," they murdered Henry's friend, Miguel Hernandez.  Not long after the murder, Henry's brother, Luis, moved away from the family home and has lived safely in El Salvador.  By the time of the hearing, Henry and his other brothers were all living in the United States.

2

Petitioner added that a month or two before his hearing, an unnamed individual who was not "a gang member [but] somebody close . . . to [a gang member] asked . . . my father directly" about Henry and his brothers. According to Petitioner, this inquiry was prompted by a message posted on social media that he was being held in immigration detention and could eventually be removed to El Salvador. The IJ found that Petitioner "speculates these individuals are gang members and will find him when he returns to El Salvador. However, there is no evidence to support this contention and it remains unclear why these individuals would look to find and harm [him]."

Petitioner conceded that he has never been threatened by MS-13, other than a verbal exchange at a soccer field in 2008—which pre-dated the attempt to recruit Henry—when they told him that he "didn't belong [in] that area." Nor has anyone in his family still living in El Salvador, including Luis, experienced any threats or harm from MS-13.[1] Nonetheless, Petitioner maintained that he was afraid of being kidnapped, tortured, and eventually murdered by MS-13 if he returned to El Salvador, and he sought withholding of removal based on his membership in the

---

[1] Petitioner also testified to two other incidents that pre-dated MS-13's attempt to recruit Henry in 2010. The IJ found that neither of these incidents had anything to do with MS-13 or Petitioner's membership in his proposed social group. Because Petitioner did not challenge this determination on appeal to the BIA, any claim for withholding of removal based on these incidents is unexhausted and cannot be raised for the first time in a petition for review. See 8 U.S.C. § 1252(d)(1).

3

particular social group defined as the "brothers of Henry Orlando Orellana-Quintanilla."

The IJ found that although Petitioner's proposed particular social group was cognizable,[2] he failed to establish a nexus between his membership in the group and any past or feared future harm and therefore denied withholding of removal. In particular, the IJ found that Petitioner "has not provided sufficiently reliable evidence that he was or will be harmed on account of being [Henry's brother] . . . rather than [being] pursued by the gangs for extortion or personal retaliation." Stated otherwise, the IJ found "the harm [that Petitioner] fears is the result of ongoing organized criminal activity that continues to [a]ffect the El Salvadoran population."[3]

In a brief order, a single member of the BIA affirmed the IJ and dismissed Petitioner's appeal. The BIA agreed with the IJ that Petitioner "did not show that membership in his family social group was at least one central reason for gang

---

[2] The IJ determined that the brothers of Henry Orlando Orellana-Quintanilla was a cognizable particular social group under In re L-E-A-, 27 I. & N. Dec. 40, 42-43 (BIA 2017). But while Petitioner's appeal was pending at the BIA, the Attorney General reversed *L-E-A-* in part, and held that "an alien's family-based group will not constitute a particular social group unless it has been shown to be socially distinct in the eyes of its society, not just those of its alleged persecutor." In re L-E-A-, 27 I. & N. Dec. 581, 582 (A.G. 2019). We need not consider the effect of the Attorney General's recent decision, however, because substantial evidence supports the BIA's decision that Petitioner failed to show the required nexus between his membership in the particular social group and the feared harm.

[3] The IJ also denied Petitioner's request for relief under the Convention Against Torture (CAT). Again, because Petitioner did not appeal the denial of CAT relief to the BIA, he cannot raise this unexhausted claim for the first time in a petition for review. See 8 U.S.C. § 1252(d)(1).

members' threats." "As found by the [IJ], the threats of gang members to harm the siblings of the brother who resisted recruitment was simply an indirect means of retaliation against the brother's refusal to join the gang." This petition for review followed.[4]

## II

"When a single member of the BIA issues a brief order affirming an IJ's decision, this court reviews both the decision of the BIA and any parts of the IJ's decision relied on by the BIA in reaching its conclusion." Dallakoti v. Holder, 619 F.3d 1264, 1267 (10th Cir. 2010) (quotation omitted). "When reviewing BIA decisions, an appellate court must look to the record for substantial evidence supporting the agency's decision: Our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." Sarr v. Gonzales, 474 F.3d 783, 788 (10th Cir. 2007) (quotation omitted). "Agency findings of fact are conclusive unless the record

---

[4] In her decision, the IJ noted that an applicant who seeks withholding of removal based on persecution by a non-governmental actor and who has not established past persecution must, in addition to demonstrating that "it is more likely than not that he would be individually subjected to persecution on one of the specified grounds," meet "the burden of establishing that it would not be reasonable for him to relocate." The BIA interpreted this comment as an alternative ground on which to affirm, noting that Petitioner's brother, Luis, "was able to avoid further threats and actual harm through relocation." We need not address the issue because we can dispose of Petitioner's claim on the dispositive nexus ground. See INS v. Bagamasbad, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."); Griffin v. Davies, 929 F.2d 550, 554 (10th Cir. 1991) ("We will not undertake to decide issues that do not affect the outcome of a dispute.").

5

demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." Id. at 788-89 (quotation omitted).

## III

To be entitled to withholding of removal, "an applicant must show a clear probability of persecution on account of one of the statutorily protected grounds." Uanreroro v. Gonzales, 443 F.3d 1197, 1202 (10th Cir. 2006) (quotation omitted). To meet this burden, "an applicant must produce evidence, either direct or circumstantial, from which it is reasonable to believe that the harm was or would be motivated in part by an actual or imputed protected ground." In re J-B-N- & S-M-, 24 I. & N. Dec. 208, 211 (BIA 2007).

In the context of an asylum claim, "the BIA [has] interpreted 'one central reason' to mean 'the protected ground cannot play a minor role in the alien's past mistreatment or fears of future mistreatment. That is, it cannot be incidental, tangential, superficial, or subordinate to another reason for harm.'" Dallakoti, 619 F.3d at 1268 (quoting *J-B-N-*, 24 I. & N. Dec. at 214). Citing In re C-T-L-, 25 I. & N. Dec. 341, 348 (BIA 2010), Petitioner says that "an applicant for [withholding of] removal must [likewise] show that his protected characteristic will be at least one central reason for the feared harm." Because Petitioner does not argue that a different standard applies to a withholding claim, we apply the "one central reason" standard.

# IV

The issue is whether the record <u>compels</u> a finding that one central reason for the threats of future harm from MS-13 was Petitioner's membership in the particular social group defined as Henry's brothers. It does not. There is scant evidence in the record about any threats to Henry's brothers, but what evidence does exist points in a different direction. For example, the evidence that MS-13 allegedly murdered Henry's friend, a non-family member, does not establish that they intend to kill his brothers, particularly in light of the fact that one of Henry's brothers was living in El Salvador when the murder occurred and continues to live there without incident.

Nor are we persuaded by Petitioner's argument that the BIA and IJ improperly "focused on whether the MS-13 was pursing [Henry] on account of a protected characteristic rather than considering [Petitioner's] situation as distinct from [Henry's]." Although Petitioner admits that "while the MS-13's threats to [Henry] might arguably fail to support a claim on his part for [withholding of] removal," neither the IJ nor BIA cited this as a reason for denying Petitioner's claim. Instead, the agency focused on the lack of a nexus between the threatened harm and Petitioner's membership in the particular social group.

Further, while the facts of this case and a handful of cases from other circuits cited by Petitioner share a common thread—the applicant's alleged persecution arose from a gang or criminal enterprise's interest in a family member—the similarities end there. For example, in <u>Perez-Sanchez v. U.S. Att'y Gen.</u>, 935 F.3d 1148 (11th Cir. 2019), the court found that the record compelled a finding that the applicant showed

7

a nexus between the persecution and his family status. "The record is replete with evidence that the Gulf Cartel sought out and continuously extorted [the applicant] because of his father-in-law's past history with the cartel." Id. at 1158. "Among other things, the Gulf Cartel held [the applicant] at gunpoint and told him that because [his father-in-law] owed them money," he "owed them money as well." Id. (quotation omitted).

In Gonzalez Ruano v. Barr, 922 F.3d 346, 348 (7th Cir. 2019), the court also found that the record compelled a finding that the applicant showed a nexus between the persecution he experienced and his membership in his wife's immediate family based on evidence that "members of a Mexican drug cartel kidnapped, tortured, and threatened to kill [him] . . . after he refused to allow the local cartel leader to 'possess' his wife."

Likewise, in Salgado-Sosa v. Sessions, 882 F.3d 451, 457 (4th Cir. 2018), the court concluded that the applicant demonstrated that his kinship ties were at least one central reason for the harm he feared, based, among other things, on evidence that the applicant was repeatedly threatened, attacked, and pursued by MS-13 because of his stepfather's conflict with the gang. And in Trujillo Diaz v. Sessions, 880 F.3d 244, 247-48 (6th Cir. 2018), the court was presented with evidence that following the applicant's brother's refusal to join a Mexican drug cartel, her father was kidnapped by the cartel, and she was told that they would hurt the family, including the applicant, if they could not find her brother.

8

By contrast, no one in Petitioner's family has experienced any harm at the hands of MS-13, and the threats directed at Henry's brothers are vague. Based on this record, a reasonable adjudicator would not be compelled to conclude that one central reason for the threats of future harm from MS-13 was Petitioner's membership in the particular social group defined as Henry's brothers.

**V**

The petition for review is denied.

Entered for the Court

Carlos F. Lucero
Circuit Judge
