FILED
United States Court of Appeals
Tenth Circuit

April 1, 2021

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

JAIRO GIOVANY RIVARS-GARCIA;
P. A. R.G.,

      Petitioners,

v.

MERRICK B. GARLAND,
United States Attorney General,*

      Respondent.

No. 20-9549
(Petition for Review)

_____

**ORDER AND JUDGMENT**\*\*
_____

Before **PHILLIPS**, **McHUGH**, and **CARSON**, Circuit Judges.
_____

Jairo Giovany Rivars-Garcia and his brother, P. A. R.-G., petition for review

of the Board of Immigration Appeals' (BIA) decision dismissing their appeal from

the Immigration Judge's (IJ) decision denying their claims for asylum, withholding

---

\* On March 11, 2021, Merrick B. Garland became Attorney General of the
United States. Consequently, his name has been substituted for William P. Barr as
Respondent. *See* Fed. R. App. P. 43(c)(2).

\*\* After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

of removal, protection under the Convention Against Torture (CAT), and humanitarian asylum. We deny the petition in part and dismiss in part for lack of jurisdiction. *See* 8 U.S.C. § 1252(a), (d)(1)

## I. BACKGROUND

Petitioners are natives and citizens of Guatemala who entered the United States as unaccompanied minors without valid visas or other entry documents.[1] After being placed in removal proceedings, they conceded removability and filed applications for asylum, withholding of removal, protection under the CAT, and humanitarian asylum.

Their claims were based on the physical and emotional abuse suffered at the hands of their father, Jairo Giovany Rivars Reyes, and their uncle, Selvin Garcia. According to Jairo, his "father would come home drunk . . . [and] fight with [his] mother." Admin. R. at 139. Following an incident where his father left them both "covered with bruises," his mother "filed a complaint for domestic violence," and eventually came to the United States. *Id.* She left Jairo and P.A. in Guatemala in the care of her mother—the petitioners' grandmother.

Petitioners lived with their grandmother for two years, during which time their uncle, Selvin, also lived at the home. Their mother believed "that they would be okay with [their grandmother] . . . [b]ut . . . [m]y brother, Selvin . . . , *beat them and*

---

[1] At the time of the IJ hearing, Jairo had reached his majority; however, P.A. R.-G. is still a minor and we refer to him by his initials.

*abused them a lot because . . . [h]e drinks too much and has never worked*."

*Id.* at 159 (emphasis added). Selvin also yelled and cursed at petitioners' grandmother when he was drunk.

To escape Selvin's abuse, petitioners left their grandmother's home returned to live with their father. But life with their father was chaotic. He often left them alone, sometimes without food, to "go out drinking with friends," or at his business where he "sold liquor and drugs." *Id.* at 139. Jairo acknowledged, however, that their father's abuse was not confined to his sons; instead, he also fought with his friends and new wife when he was drunk or high on drugs. P.A. corroborated Jairo's testimony about the abuse they suffered at the hands of their father and uncle. When asked why their father abused them, petitioners testified that it was because he used alcohol and drugs and considered them his property.

"One . . . night [their] father came home very drunk and kicked [Jairo] out of the house." *Id.* Jairo lived with his aunt, Zully, for four months before he and P.A. came to the United States to join their mother.[2] During the time Jairo lived with Zully, his father would sometimes show up drunk looking for him and yell at his aunt. Jairo said that if he was forced to return to Guatemala, he would be afraid to live with Zully because his father might harm her children as retribution.

Jairo further testified that since his arrival in the United States, he has been diagnosed with a learning disability that makes it difficult for him to process and

---

[2] By the time Jairo and P.A. arrived in the United States their mother had remarried and given birth to a son.

retain information. According to Jairo, his disability will make it especially difficult for him to find gainful employment in Guatemala to support himself and his brother. P.A. added that their grandmother has passed away, and that as a youth in Guatemala without adequate family support, particularly the lack of "a father and a mother to tell [him] what's right and what's wrong," he might make bad decisions that lead to dire consequences. *Id.* at 91.

For their asylum and withholding of removal claims, petitioners maintained that they were persecuted and feared future persecution on account of their membership in the particular social groups of (1) the immediate members of the Rivars and Garcia families and (2) Guatemalan youth without adequate familial support. Jairo also sought relief based on his membership in the particular social group of Guatemalan youth with disabilities.

For his claim under the CAT, Jairo alleged that upon his return to Guatemala, he would be forced to live in a government-run home for people with disabilities, which has a history of mistreating residents. And for his CAT claim, P.A. alleged that he would be forced to live in a shelter for children where he would be mistreated or possibly killed with the government's acquiescence.

The IJ found that petitioners were credible, but concluded they failed to carry their burden of proving their eligibility for asylum, withholding of removal, or protection under the CAT. The BIA dismissed their appeal. This petition for review followed.

## II.  SCOPE AND STANDARD OF REVIEW

The BIA affirmed the IJ's decision in a brief order issued by a single board member.  In this circumstance, "we review the BIA's decision as the final agency determination and limit our review of issues specifically addressed [in the BIA's order]."  *Diallo v. Gonzales*, 447 F.3d 1274, 1279 (10th Cir. 2006).  "However, when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds."  *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).

We review the BIA's legal conclusions de novo and its factual findings for substantial evidence.  *See Rivera-Barrientos v. Holder*, 666 F.3d 641, 645 (10th Cir. 2012).  Under the substantial-evidence standard, "the BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary."  *Id.* (brackets and internal quotation marks omitted); 8 U.S.C. § 1252(b)(4)(B) ("[A]dministrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.").

## III.  ANALYSIS

### A.  Asylum and Withholding of Removal

Petitioners had the burden of proving they were eligible for asylum and withholding of removal.  *See Rodas-Orellana v. Holder*, 780 F.3d 982, 986 (10th Cir. 2015).  For asylum, the applicant must establish that he is unable or unwilling to return to his country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular

5

social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). For withholding, the applicant must prove a clear probability of persecution on account of one of the statutorily protected grounds. *Rodas-Orellana*, 780 F.3d at 987 (internal quotation marks omitted). "The burden of proof for [withholding] is higher than for asylum." *Dallakoti v. Holder*, 619 F.3d 1264, 1267 (10th Cir. 2010). Therefore, "[f]ailure to meet the burden of proof for an asylum claim necessarily forecloses meeting the burden for a withholding claim." *Rodas-Orellana*, 780 F.3d at 987.

But simply proving past persecution or the fear of future persecution on account of a protected ground is not enough; rather, the protected ground must be "at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i); *see also Rivera-Barrientos*, 666 F.3d at 646 ("For persecution to be 'on account of' a statutorily protected ground, the victim's protected characteristic must be central to the persecutor's decision to act against the victim." (internal quotation marks and brackets omitted)); *Dallakoti*, 619 F.3d at 1268 (accepting the BIA's interpretation of "one central reason" as meaning "the protected ground cannot play a minor role in the alien's past mistreatment or fears of future mistreatment" and "cannot be incidental, tangential, superficial, or subordinate to another reason for harm" (quoting *In re J-B-N- & S-M-*, 24 I. & N. Dec. 208, 214 (B.I.A. 2007))).

## 1. Immediate Members of the Rivars and Garcia Families

A "particular social group" is "a group of persons all of whom share a common, immutable characteristic such as sex, color, or kinship ties." *Rodas-Orellana*, 780 F.3d at 990 (ellipsis and internal quotation marks omitted). Here, the

6

IJ found that the proposed social group of immediate members of the Rivars and

Garcia families was a cognizable particular social group[3] and that petitioners

"suffer[ed] harm at the hands of their father and their uncle." Admin. R. at 47.

However, the IJ found that "there is no evidence . . . that the violence against them

was perpetrated because of their family ties." *Id.* Instead, the IJ found that both men

"looked for victims of convenience" when they were "drunk or high." *Id.* For

example, Jairo testified that his father fought with his friends and his new wife—not

just his sons. Also, their mother stated that Selvin beat the boys because he drinks

too much—not because they were his nephews. Therefore, the IJ found that "the type

---

[3] Citing *In re L-E-A-*, 27 I. & N. Dec. 40, 42-43 (BIA 2017), the IJ determined that immediate members of the Rivars and Garcia families was a cognizable particular social group. *See* Admin. R. at 47. But while Jairo's and P.A.'s appeal was pending at the BIA, the Attorney General reversed *L-E-A-* in part, and held that "an alien's family-based group will not constitute a particular social group unless it has been shown to be socially distinct in the eyes of its society, not just those of its alleged persecutor." *In re L-E-A-*, 27 I. & N. Dec. 581, 582 (A.G. 2019). The BIA, however, found "[i]t is unnecessary to remand for further consideration . . . in light [of the Attorney General's recent decision], because even assuming a cognizable particular social group was presented in this case, we agree [with the IJ's finding] that [petitioners] did not establish that their membership in the group is at least one central reason for any past or future harm." Admin. R. at 4 (internal quotation marks omitted). We also do not consider the Attorney General's recent decision because the petition can be resolved on the grounds that the BIA's decision that Jairo and P.A. failed to prove the required nexus is supported by substantial evidence. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."); *Griffin v. Davies*, 929 F.2d 550, 554 (10th Cir. 1991) ("We will not undertake to decide issues that do not affect the outcome of a dispute.").

7

of [past] harm suffered by [petitioners] is not on account of their membership in [the Rivars and Garcia families] and cannot form the basis of a claim to asylum." *Id.*

As to future persecution, the IJ found that Zully's "home is a safe place for the boys and they have not offered any evidence that it would be unreasonable for them to relocate there." *Id.* at 50. The IJ further found that their additional fears, "such as gang recruitment," do not "rise[] to the level of persecution," or "have anything to do with their membership in [the Rivars and Garcia families] rather than general country conditions." *Id.* For these reasons, the IJ also found that petitioners "failed to meet their burden of establishing a well-founded fear of future persecution if returned to Guatemala." *Id.*

The BIA affirmed, noting that "[t]he record supports the [IJ's] finding that the abuse [petitioners] suffered at the hands of their father and uncle was not on account of their family ties, but because they were, unfortunately, victims of convenience." *Id.* at 4 (internal quotation marks omitted). These administrative findings are conclusive because no reasonable adjudicator would be compelled to reach a contrary conclusion. *See Rivera-Barrientos*, 666 F.3d at 645. Further, because petitioners failed to meet their burden of proof for asylum, their claims for withholding of removal necessarily failed. *See Rodas-Orellana*, 780 F.3d at 987.

### 2. Youth Without Familial Support and Youth With Disabilities

The IJ found that the proposed social groups of Guatemalan youth without adequate familial support and youth with disabilities were not cognizable because they were not described with particularity or viewed by Guatemalan society as

8

distinct social groups. The IJ further found that even if the proposed groups were cognizable, petitioners failed to establish that abuse they suffered at hands of their father and uncle was linked to their ages, lack of familial support, or a disability. The BIA affirmed.

The government argues that petitioners have waived any challenge to the BIA's decision because their brief contains no contentions of error and supporting authorities as required under Federal Rule of Appellate Procedure 28(a)(8)(A). We agree. *See Herrera-Castillo v. Holder*, 573 F.3d 1004, 1010 (10th Cir. 2009) (citing Fed. R. App. P. 28(a) and explaining that an argument insufficiently raised in the opening brief is waived).

## B. CAT Protection

On appeal to the BIA, petitioners raised four issues: (1) "[w]hether the IJ erred in finding that Youth Without Adequate Familial Support . . . and Youth with Disabilities . . . do not constitute cognizable particular social groups"; (2) "[w]hether the IJ erred in find the harm [Jairo] suffered or will suffer was not on account of his membership in a particular social group"; (3) "[w]hether the IJ erred in finding internal relocation to be reasonable"; and (4) "[w]hether the IJ erred in failing to consider humanitarian asylum." Admin. R. at 9 (internal quotation marks omitted). Because petitioners failed to raise an issue or develop any argument concerning the IJ's denial of CAT relief, the BIA held the issue was waived. *See id.* at 3 n.1 ("As the [petitioners] have not meaningfully challenged the [IJ's] denial of their requests for protection under the [CAT], this issue is deemed waived.").

The government maintains that because petitioners failed to exhaust their CAT claims at the BIA, this court lacks jurisdiction to consider them on appeal. *See* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right."). For their part, petitioners state that they "meaningfully challenge[d]" the IJ's decision at the BIA, and the claims "should not have been waived." Pet'rs' Br. at 20 (boldface, underline, and internal quotation marks omitted). However, petitioners fail to direct us to any reference in the record where they raised the issue at the BIA as required by 10th Cir. R. 28.1(A), and our independent review of the record likewise fails to disclose any instance where the issue was raised.

"It is not enough to go through the procedural motions of a BIA appeal, or to make general statements in the notice of appeal to the BIA, or to level broad assertions in a filing before the Board." *Garcia-Carbajal v. Holder*, 625 F.3d 1233, 1237 (10th Cir. 2010) (internal quotation marks omitted). Rather, "[t]o satisfy § 1252(d)(1), an alien must present the *same specific legal theory* to the BIA before he or she may advance it in court." *Id.* "Under § 1252(d)(1) . . . , [petitioners] had a duty to present to the BIA all of [their] specific legal theories for reversal. This [they] did not do, and [they] may not add new theories seriatim as the litigation progresses from the agency into the courts." *Id.* at 1238. Because petitioners failed to exhaust their CAT claims before the BIA, we lack jurisdiction to consider them.

### D. Humanitarian Asylum

Under 8 C.F.R. § 1208.13(b)(1)(iii), the agency can grant asylum to an alien who previously established that he suffered past persecution on account of a protected ground, without having shown a well-founded fear of future persecution. However, if an alien fails to demonstrate that he experienced past persecution, as defined for immigration purposes, he is not eligible to be considered for humanitarian asylum. *See In re L-S-*, 25 I. & N. Dec. 705, 710 (B.I.A. 2012) ("We emphasize that every asylum applicant who arrives at this stage of the analysis has demonstrated past persecution and thus has proven that he or she is a 'refugee.'").

The BIA recognized that the IJ did not address petitioners' claims for humanitarian asylum but found there was no prejudice. We agree. "In order to prevail on [a] due process claim, [an alien] must establish both that he was deprived of due process and that that deprivation prejudiced him." *Lucio-Rayos v. Sessions*, 875 F.3d 573, 576 (10th Cir. 2017). Prejudice means that an alien's "rights were violated in a manner so as potentially to affect the outcome of the proceedings." *Id.* at 577 (internal quotation marks omitted). Because petitioners were not eligible to be considered for humanitarian asylum, they were not prejudiced by the IJ's failure to consider their claims.

## IV. CONCLUSION

The petition for review is denied, except for petitioners' CAT claims, which they failed to exhaust, and are therefore dismissed for lack of appellate jurisdiction.

Entered for the Court


Gregory A. Phillips
Circuit Judge

12