**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 4, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

STEVEN ONYSKO,

      Petitioner,

v.

ADMINISTRATIVE REVIEW BOARD;
UNITED STATES DEPARTMENT OF
LABOR; THOMAS E. PEREZ, Secretary
of Labor,*

      Respondents.

----------------------------

UTAH DEPARTMENT OF
ENVIRONMENTAL QUALITY,

      Intervenor.

No. 13-9529
(Petition for Review)

---

**ORDER AND JUDGMENT**\*\*

---

Before **KELLY**, **TYMKOVICH**, and **PHILLIPS**, Circuit Judges.

---

\*      Pursuant to Fed. R. App. P. 43(c)(2) Thomas E. Perez is substituted as Secretary of Labor for Seth D. Harris, effective July 23, 2013.

\*\*     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Steven Onysko, an environmental engineer with the Utah Department of Environmental Quality (DEQ), proceeding pro se, filed a series of complaints with the Occupational Safety and Health Administration (OSHA) in which he alleged that he was demoted from a managerial position in retaliation for reporting alleged violations of the Safe Drinking Water Act of 1974 (SDWA). OSHA investigated and dismissed the complaints.

Following a four-day evidentiary hearing, an administrative law judge (ALJ) issued a decision and order that dismissed Onysko's "whistleblower" complaint because, among other reasons, he failed to prove causation:

> [Onysko] has set forth a number of theories in an attempt to demonstrate his engagement in protected activities in some way served as a motivating factor to alleged adverse actions taken against him by [DEQ]. After examination of these theories against the record, however, I find them entirely based on [Onysko's] own subjective interpretation of the facts presented in this case and entirely without merit. Consequently, I find lack of causation constitutes an additional basis for dismissal of [Onysko's] whistleblower complaint.

Admin. R. at 2890.

In a two-to-one decision, the United States Department of Labor Administrative Review Board (Board) found that the ALJ's causation determination was supported by substantial evidence, and affirmed the ALJ's decision "on that narrow basis." *Id*. at 3294. Exercising jurisdiction under 42 U.S.C. § 300j-9(i)(3)(A), we affirm the Board's final decision and order.

# I.    BACKGROUND

## A.  Onysko's Promotion

Onysko is a registered professional engineer who works for DEQ.  In 2007, the Division of Drinking Water (DDW), which is part of DEQ, was divided into two sections:  engineering and construction.  Onysko's then supervisor, Ken Wilde, became manager of construction, and on July 1 Onysko was conditionally promoted from environmental engineer to engineering section manager.  As part of the promotion process, Onysko signed a performance plan detailing the responsibilities of his new job, which included:  (1) the development and adoption of rules; (2) the development of a tracking scheme for rule exceptions; (3) the enabling of web access for DDW partners and clients; (4) evaluating the feasibility of a newsletter; (5) ensuring the quality of data entered by subordinate staff; (6) managing the engineering section of DDW; (7) implementing DEQ's operating principles; (8) keeping DDW's director informed of client concerns; and (9) providing weekly intra-section reports.  Onysko's promotion was subject to a twelve-month career mobility period during which DEQ had the right to terminate or end the assignment, without prior notice, for any reason.  Upon completion of the mobility period, Onysko was to be placed in the job on a permanent basis.

## B.  "Whistleblowing" Incidents

Onysko alleged the first incident of whistleblowing took place in May 2007, when he discovered an undersized water line at Pheasant Meadows, a subdivision

that had already received DEQ approval of its waterlines. Onysko notified Kenneth Bousfield, the executive director of DDW, who in turn took steps to correct the potential hazard.

The next incidents concerned Slate Canyon. Onysko inspected a water pipeline on October 4, 2007, and observed the use of non-approved glues and sealants and air vents instead of air valves. He reported his concerns to Bousfield that same day. On October 25, Onysko renewed his concerns. Nonetheless, DEQ's deputy director, William Sinclair, directed Onysko to prepare an operating permit, which was eventually issued pursuant to a letter authored by Onysko and signed by Bousfield on October 29.

## C. Managerial Problems

By mid-August 2007, and not long after his promotion, DEQ staff began to complain about Onysko's lack of management skills. In addition to personality conflicts, they offered comments about the untimeliness of his work and his failure to communicate effectively with customers. In mid-October 2007, Sinclair had two meetings with Bousfield in which they discussed these problems. The meetings were memorialized in two memoranda prepared by Sinclair.

The October 12, 2007 memorandum noted that Onysko was a micro-manager who: (1) circumvented a district engineer's decision-making authority; (2) damaged DEQ's relationships with private engineers; and (3) insisted on gold-standard engineering, which made it difficult to meet deadlines and created the potential for

increased costs. The October 15 memorandum addressed Onysko's failure to timely review plans and his insistence on following his interpretation of DEQ's rules. The memorandum also mentioned an argument between Onysko and Wilde during a presentation to an outside agency. Sinclair noted two options, although he did not advocate for either outcome: (1) correcting Onysko's behavior while allowing him to remain as a manager; or (2) returning Onysko to his previous job.

## D. Onysko's Demotion

On October 25, 2007, Onysko was demoted. The letter issued in conjunction with this action noted that Onysko's interactions with DEQ staff and its customers had been ineffective and inappropriate. More specifically, the letter noted Onysko's failure to: (1) respond to the customer's requests to meet so as to move the Slate Canyon project forward; (2) timely complete the review of plans; and (3) properly coordinate an investigation of funding. As the overarching reason for the demotion, the letter cited Onysko's "inability to work with others, which is in violation of [DEQ's] Operating Principles and [his] specific performance plan." Admin. R. at 2858. At the conclusion of this meeting, Onysko renewed his concerns about Slate Canyon. Sinclair nonetheless directed him to prepare an operating permit.

## E. OSHA Complaints

In June, July and September 2008, Onysko filed complaints with OSHA in which he alleged that DEQ had retaliated against him as a "whistleblower."

Onysko's June 1 complaint concerned his demotion, which occurred more than 200 days earlier on October 25, 2007.

Onysko's second complaint, filed on July 8, 2008, stemmed from a July 3 performance review of Onysko's four-month tenure as engineering section manager in which he received ratings of "successful" in six categories and "unsuccessful" in the seventh. With regard to the unsuccessful category, Bousfield wrote:

> [Onysko] views DEQ's Operating Principles . . . as an impediment to enforcing the Safe Drinking Water Act and Rules. [Onysko] demonstrates an unwillingness to see that one can achieve compliance with Rules by implementing [Operating Principles]. [He] is also unwilling to accept management's directions regarding [the Operating Principles]. This disconnect between [the Operating Principles] and Rule compliance overshadowed [Onysko's] good work and showed he was not ready for leadership within DDW.

*Id*. at 2860.

Onysko's third and final OSHA complaint was filed on September 9, 2008. This complaint had its origins in a warning letter Onysko received on August 11 as a result of having sent an inappropriate email to a co-worker in July. In the email, Onysko cautioned a fellow employee about taking advice from a particular supervisor and also accused that supervisor of lodging a secret complaint about Onysko that resulted in the demotion. OSHA dismissed the complaints.

## II.    LEGAL FRAMEWORK

### A.  The SDWA

The SDWA prohibits an employer from discharging or discriminating against an employee because of his involvement in activities concerning the administration

- 6 -

or enforcement of drinking water regulations. § 300j-9(i)(1)(A-C); 29 C.F.R. § 24.102(a)-(b). "Any employee who believes that he has been discharged or otherwise discriminated against by any person in violation of [the SDWA] may, within 30 days after such violation occurs, file . . . a complaint." § 300j-9(i)(2)(A). *See also* 29 C.F.R. § 24.103(d)(1).

To prevail on his "whistleblower" claim Onysko was required, among other things, to prove causation. The element of causation required Onysko to "demonstrate[] by a preponderance of the evidence that the protected activity caused or was a motivating factor in the adverse action alleged in the complaint." 29 C.F.R. § 24.109(b)(2). Only if Onysko met his burden to prove causation and the other elements of his claim was DEQ required to come forward with evidence "that it would have taken the same adverse action in the absence of the protected activity." *Id.* A motivating factor is the same as a substantial factor. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *see also Hulen v. Yates*, 322 F.3d 1229, 1237 (10th Cir. 2003) (holding that an employee is required "to demonstrate that [engaging in the protected activity] was a substantial or motivating factor in the adverse employment action.").

## B. Standard of Review

This court reviews the Board's final decision and order under the Administrative Procedure Act (APA). 5 U.S.C. § 706. We must sustain the Board's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law," or "unsupported by substantial evidence." § 706(2)(A), (E); *see Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 850 (10th Cir. 2007). Our review of the Board's legal determinations is de novo. *Trimmer v. U.S. Dep't of Labor*, 174 F.3d 1098, 1102 (10th Cir. 1999).

Our review of the facts is limited to a determination of whether they are supported by substantial evidence. *Hall*, 476 F.3d at 854. "Substantial evidence is such relevant evidence a reasonable person would deem adequate to support the ultimate conclusion." *Id*. (internal quotation marks omitted). This standard "requires more than a scintilla but less than a preponderance of the evidence." *Id*. It "does not allow a court to displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Trimmer*, 174 F.3d at 1102 (internal quotation marks omitted). As such, "[o]ur review . . . is quite narrow." *Hall*, 476 F.3d at 850 (internal quotation marks omitted). Moreover, because the Board's final decision and order was based in part on the ALJ's credibility determinations, "it is entitled to great deference." *Trimmer*, 174 F.3d at 1102. When applying the substantial-evidence standard, "[t]his court reviews the entire record, including the ALJ's recommendation and any evidence contrary to the [Board's] decision." *Id*.

### III. ANALYSIS

#### A. Adverse Action

In issues one, two, four, and six, Onysko argues that the ARB majority and the ALJ erred in either not finding adverse action or incorrectly analyzing and failing to assign proper weight to various incidents. We need not decide these issues because they are irrelevant to our resolution of the case, i.e., they concern whether the actions taken by DEQ were adverse actions. In his decision and order, the ALJ found that the October 27, 2007 demotion was an adverse action, but it was not actionable because Onysko did not file an OSHA complaint within 30 days of the demotion as required by law. *See* § 300j-9(i)(2)(A); § 24.103(d)(1). As to the performance evaluation and warning letter, the ALJ decided that they were not adverse actions. The ALJ could have concluded his analysis at that point, but he did not. Instead, he concluded that even if the performance evaluation and warning letter were adverse actions, there was no causation. The Board affirmed on this narrow ground. Therefore, Onysko's arguments about adverse action are irrelevant and we do not consider them. *See Griffin v. Davies*, 929 F.2d 550, 554 (10th Cir. 1991) ("We will not undertake to decide issues that do not affect the outcome of a dispute.").

#### B. Board's Dissent

Issues three and five, arguing that the ARB majority erred in affirming on lack of causation without addressing adverse action concerning various events, are essentially the same. Onysko urges this court to adopt the rationale of the Board's

dissenting member. Although Onysko did not file a timely OSHA complaint concerning the demotion, he did file a timely complaint about the subsequent performance evaluation. The dissent reasoned that because the evaluation "effectively reached back to [the] demotion for its substance and cause . . . it was error for the ALJ to fail to address causation in connection with the demotion itself – i.e., whether Onysko's protected activity was a motivating factor in his October 25[], 2007 demotion." Admin. R. at 3296. Alternatively, the dissent noted that "[a]rguably, [DEQ] 'tolled' the statute of limitations by addressing the demotion in the 'after-the-fact' July 3[] [e]valuation." *Id.*

We address the tolling argument first. Setting aside the fact that Onysko does not offer any authority to support this reasoning, the statute of limitations had already run by the time of the performance evaluation; thus, there was nothing to "toll." Next, Onysko's argument that the demotion and performance review were effectively a single action is contrary to the law. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."); *see also Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1178 (10th Cir. 2011) (holding that discrete acts such as demotion, "trigger the statute of limitations when announced to the claimant, and do so whether or not all of their adverse effects or consequences are immediately felt"). As such, Onysko's third and fifth issues lack merit.

- 10 -

## C.  Contributing Factor Test

In his seventh and eighth issues, Onysko argues for application of the contributing factor test and a concomitant burden on DEQ to demonstrate by clear and convincing evidence that it would have taken the alleged adverse actions in the absence of Onysko's protected activities.  This test does not apply to claims under the SDWA.  *See* § 24.109(b)(2).

## D.  Previous Performance Evaluations

Onysko frames the ninth issue as follows:  "The ALJ mined 10 years of 100 percent successful/exceptional performance evaluations as staff engineer looking for pretext to dismiss Onysko's complaints."  Pet'r Opening Br. at 70.  Onysko has failed to establish the relevance of this argument to whether the Board's decision is supported by substantial evidence.

## E.  Onysko's Witnesses

As to the tenth issue, Onysko alleges that "[t]he ALJ . . . dismissed the testimony of all of Onysko's witnesses."  *Id*. at 35.  This argument is based on a misreading of the ALJ's decision.  The ALJ said he was not going *to discuss* the testimony of each of Onysko's witnesses:  "Before moving on to the background of [Onysko's] work history, however, I here note my reasoning for omitting from the following background discussion the testimony of some of the witnesses called by [Onysko] in this case."  Admin. R. at 2832.  In particular, and as to the witnesses Onysko offered to establish his abilities as an engineer and the nature of the problems

he discovered at Pheasant Meadows and Slate Canyon, the ALJ wrote: "Although considered, I do not discuss this testimony as I ultimately find other witnesses' testimony is sufficient to establish [Onysko's] technical expertise and gives merit to [his] allegations of having engaged in protected activity." *Id.* at 2833. The decision not to discuss the testimony of each witness is different from dismissing their testimony.

## F. Protected Activity

Onysko's eleventh issue is a reprise of whether the use of air vents instead of air vales on the Slate Canyon project created a risk of contamination. The ALJ found that there was no such risk and that Onysko's report of the same was not a protected activity. Because the Board resolved the case on causation, it did not consider the issue. We do not decide the issue because it "do[es] not affect the outcome of [the] dispute." *Griffin*, 929 F.2d at 554.

## G. Pro Se Bias

The twelfth issue concerns the ALJ's alleged bias against Onysko as a pro se litigant. Onysko argues that the ALJ found his testimony less credible than other witnesses due to the form of his questions. This ignores much of what the ALJ found. In addition to his criticism of Onysko's leading questions, the ALJ observed that he "argue[d] with witnesses who did not agree with his phrasing of events . . . [his] questions were . . . sometimes infused with extreme characterizations of events and descriptions of circumstances . . . [and he] misrepresent[ed] . . . certain events

within the record." Admin. R. at 2870-71. Onysko, however, ignores that the ALJ found him especially credible "with respect to his professional and technical knowledge," *id*. at 2871, and assisted in putting on his case. More to the point, Onysko has not cited any authority that the ALJ's credibility determination was based on improper factors.

## H. Post-Hearing Motion

For his thirteenth issue, Onysko points to a post-hearing motion to supplement the record with a letter he authored and in which he noted a third potential hazard at Slate Canyon. DEQ explained the contents of the letter in its opposition to the motion: "The third issue [Onysko] claims to have raised [in the letter] is the lack of fencing around the spring collection areas." *Id*. at 2823. The ALJ denied the motion because the letter was known to Onysko at the time of the hearing and he failed to introduce it.

Onysko never explains why the ALJ's ruling was incorrect. *See* Fed. R. App. P. 28(a)(9) (requiring supporting reasons). Instead, he asserts that if the ALJ had granted the motion, he would have been able to "prov[e] yet another instance of DEQ shifting its (pretextual) explanations for [his] demotion and negative Performance Evaluation." Pet'r Opening Br. at 80. But Onysko's failure to develop any argument means that he has waived the issue. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005) (holding that a party, including a pro se litigant, waives an inadequately briefed issue).

- 13 -

**I. DEQ Operating Principles**

Onysko's fourteenth issue on appeal concerns his contention that DEQ's Operating Principles were used as a pretext for the demotion. In essence, he argues that they were merely guidelines and could not serve as a legitimate basis for an adverse employment action. Once again, Onysko cites no authority for this argument. More to the point, Onysko signed a performance plan detailing the responsibilities of his management job, which included the requirement to implement DEQ's operating principles. He cannot argue now that the operating principles were immaterial.

**J. De Novo Review**

Onysko's final issue is more of a request than an argument. He asserts that the Board erred because it "did not conduct a de novo review of the facts in this case," Pet'r Opening Br. at 83, and urges this court to conduct such a review. This request is without merit because our review of the Board's decision is limited to a determination of whether its factual determinations are supported by substantial evidence, *Hall*, 476 F.3d at 854, and they are.

## IV.    CONCLUSION

The Board's final decision and order is affirmed.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

- 14 -