**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**April 28, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

STEVEN ONYSKO,

    Petitioner,

v.

MARTIN J. WALSH, Secretary of Labor;
ADMINISTRATIVE REVIEW BOARD,
UNITED STATES DEPARTMENT OF
LABOR,

    Respondents.

Nos. 21-9529 & 21-9530
(OSHC No. 2019-0042)
(Petitions for Review)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **PHILLIPS**, **BALDOCK**, and **BRISCOE**, Circuit Judges.

_____

In these consolidated appeals, Dr. Steven Onysko, pro se,[1] petitions for review

of a final decision and order of the United States Department of Labor's

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Because Dr. Onysko proceeds pro se, we construe his arguments liberally, but we "cannot take on the responsibility of serving as [his] attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

Administrative Review Board affirming the grant of summary decision to his former employer, the Utah Department of Environmental Quality (DEQ). The Board's decision followed his complaint of unlawful retaliation in violation of the Safe Drinking Water Act (SDWA), 42 U.S.C. § 300j-9(i)(1)(C). Exercising jurisdiction under 42 U.S.C. § 300j-9(i)(3)(A), we affirm the Board's final decision and order.

## BACKGROUND

Dr. Onysko worked as an environmental engineer for DEQ beginning in 1998. In mid-2007, he briefly served as the Water Engineering Section Manager for the DEQ's Division of Drinking Water, but the division director reassigned him back to his previous position after about three months. Dr. Onysko pursued a complaint with the Department of Labor, through the Occupational Safety and Health Administration (OSHA), alleging this demotion was retaliatory in violation of the whistleblower protection provisions of the SDWA. An administrative law judge (ALJ) and the Board ultimately rejected those claims, and we affirmed the Board's final decision in *Onysko v. Administrative Review Board*, 549 F. App'x 749, 757 (10th Cir. 2013) (*Onysko I*).

On October 26, 2016, Dr. Onysko filed a new complaint, alleging DEQ had continued to retaliate against him since the conclusion of his first complaint. He alleged the retaliation stemmed from his protected activity under the SDWA— specifically, his efforts to ensure public water systems complied with SDWA requirements. On October 23, 2017, DEQ terminated Dr. Onysko's employment, so on October 24 Dr. Onysko filed another complaint challenging the termination.

2

The ALJ consolidated both complaints.  During a telephonic status conference with the ALJ, Dr. Onysko identified and numbered 86 separate actions he alleged were retaliatory.  DEQ moved for summary decision, arguing all but six of the alleged adverse actions occurred more than 30 days prior to Dr. Onysko's complaint and so were untimely under 42 U.S.C. § 300j-9(i)(2)(A)(1).[2]  DEQ conceded six of the remaining adverse actions were not time-barred.  Those claims, which Dr. Onysko numbered 23, 38, 64, 65 (the first one), and 87 were: (23) a letter of written warning issued to Dr. Onysko on October 17, 2016; (38) a notice of written reprimand issued to Dr. Onysko on December 16, 2016; (64) a letter of discipline dated January 13, 2017; (65a) Dr. Onysko's reassignment to administrative leave; and (87) Dr. Onysko's termination.[3]

With respect to the six timely-complained-of incidents, DEQ argued Dr. Onysko could not show causation and that it would have taken each of the challenged actions regardless of whether Dr. Onysko engaged in protected activity. DEQ supported its motion with the investigation report of an outside state agency

---

[2] The ALJ also concluded many of the time-barred claims were not actionable for other reasons.  For instance, some of the alleged incidents of retaliation were actions taken by third parties, some amounted to complaints of incivility, and some were merely adverse actions taken in his state-level administrative grievance proceedings.

[3] Dr. Onysko ended his summary of alleged retaliatory actions at number 87, but because he accidentally used number 65 twice and omitted numbers 16 and 73, he described only 86 such actions, not including his termination, which the ALJ designated number 87.  For clarity, in this opinion we retain Dr. Onysko's numbering.

that reviewed complaints by Dr. Onysko's supervisor that he had engaged in harassing and abusive conduct toward her.

DEQ also submitted declarations from Dr. Onysko's superiors stating they would have taken the same disciplinary actions against Dr. Onysko regardless of whether he had engaged in protected activity. Ying-Ying McCauley, for example, who served as Dr. Onysko's supervisor from December 2007 to February 2017, stated that "[g]iven the evidence provided to [her], as a supervisor [she] would make the same decisions and issue the written warning and the letter of reprimand, even if [Dr.] Onysko had been in a protect[ed] status, as he once asserted to [her] that he was." R. vol. 13 at 100.

Marie Owens, who served as Dr. Onysko's direct supervisor from February 2017 to his termination, stated she would have placed him on administrative leave "even if he had been on a protected status as a whistleblower." *Id.* at 114. Ms. Owens also stated that "[e]ven if [Dr.] Onysko had been in a protected (whistleblower) status, [she] would have issued the Letter of Intent recommending termination of employment because it was clear that [Dr.] Onysko knew the standards and because his behavior had the potential to continue to harm the Division and its mission." *Id.* at 119.

Alan Matheson, the Executive Director of DEQ, likewise detailed the considerations that went into his decision to terminate Dr. Onysko and stated he "would have come to the same conclusions, would have offered [Dr.] Onysko the same settlement agreement, and would have terminated [Dr.] Onysko's employment,

4

even if he had been in a protected status, as all [Matheson's] actions were based on [Dr.] Onysko's conduct unrelated to any alleged protected status." *Id.* at 151.

The ALJ granted the motion, agreeing that 81 of the 87 alleged retaliatory acts occurred more than 30 days prior to Dr. Onysko's complaint and concluding that, of the remaining six, even assuming Dr. Onysko had engaged in protected activity, DEQ would have taken all of the challenged actions anyway. Although Dr. Onysko presented an opposing declaration, the ALJ disregarded it for two reasons. First, Dr. Onysko did not sign it under oath or under penalty of perjury. Second, the declaration's substance constituted "nothing more than general allegations and nonspecific denials which do not directly address the facts [DEQ] contends are undisputed." *Id.* vol. 20 at 78.

Dr. Onysko appealed to the administrative review board, which affirmed. Dr. Onysko argued to the Board that the ALJ should have considered all 87 acts together as a single hostile work environment claim, but because he did not press that theory before the ALJ, the Board declined to consider it. Alternatively, the Board concluded that even considering all 87 acts in the aggregate, they were not sufficiently severe or pervasive to create a hostile work environment as a matter of law. The Board also affirmed the ALJ's conclusion that DEQ would have taken the same actions regardless of whether Dr. Onysko engaged in protected activity. Dr. Onysko filed a motion for reconsideration, which the Board denied.

Dr. Onysko timely filed two petitions for review, one following the initial Board decision and one following the denial of reconsideration. We consolidated the petitions.

**DISCUSSION**

We review the Board's final decision and order under the Administrative Procedure Act (APA), 5 U.S.C. § 706. Under the APA, we must sustain the Board's decision unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," or "unsupported by substantial evidence." § 706(2)(A), (E); *see Hall v. U.S. Dep't of Lab.*, 476 F.3d 847, 850 (10th Cir. 2007) (same). We review the Board's legal determinations de novo. *Trimmer v. U.S. Dep't of Lab.*, 174 F.3d 1098, 1102 (10th Cir. 1999).

"To state a claim under the whistleblower provision of an environmental statute, the plaintiff must establish that his employer retaliated against him because he engaged in a protected activity." *Hall*, 476 F.3d at 851 (internal quotation marks omitted). But, even if an employee demonstrates retaliation, "relief may not be ordered if the [employer] demonstrates by a preponderance of the evidence that it would have taken the same adverse action in the absence of the protected activity." 29 C.F.R. § 24.109(b)(2); *see also Hall*, 476 F.3d. at 854 n.4. In a proceeding before an ALJ, a summary decision functions analogously to summary judgment: it is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to decision as a matter of law." 29 C.F.R. § 18.72(a).

Dr. Onysko presents several criticisms of the agency on appeal, but his arguments do not meaningfully engage with the basis for the ALJ's grant of summary decision or the Board's affirmance of that decision. Invoking *United States v. Mead Corp.*, 533 U.S. 218 (2001) and *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), he argues we owe no deference to the agency decision because the ALJ and Board decisions "lack the care, thoroughness, validity of reasoning, and consistency with earlier and later pronouncements." Aplt. Opening Br. at 36. But *Mead* and *Skidmore* concerned the degree of deference owed to an agency's interpretation of federal statutes. *See Mead*, 533 U.S. at 226–27; *Skidmore*, 323 U.S. at 140. Dr. Onysko presents no issue of statutory interpretation: he argues that the Board misapplied the SDWA, not that it misinterpreted it.

Reviewing both the ALJ's order granting summary decision and the Board's final decision and order affirming it, we conclude both are correct for substantially the same the reasons set forth therein.[4] Dr. Onysko does not contest the conclusion that 81 of the alleged retaliatory acts occurred more than 30 days prior to his complaint, and so were untimely. He argues the ALJ incorrectly "disaggregated" what he actually intended as a single hostile work environment claim into separate incidents, Aplt. Opening Br. at 49, but we previously rejected this theory as a means to avoid the statute of limitations in *Onysko I*, and we do so again here. *See*

---

[4] Because we conclude the Board correctly affirmed the decision of the ALJ, we necessarily conclude it correctly denied Dr. Onysko's motion for reconsideration of its decision.

549 F. App'x at 755; *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.").

Further, we find no error in the Board's conclusion that Dr. Onysko did not present his "single claim" theory to the ALJ, so it appropriately declined to consider it for the first time on appeal. Dr. Onysko argues his opposition to the motion for summary decision "incorporates an entire chapter . . . raising [a] theory of adverse action." Aplt. Opening Br. at 38. Initially, we note that Dr. Onysko's citation to his entire 98-page brief before the ALJ in support of his assertion that he raised a particular legal theory is improper. *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995) ("Judges are not like pigs, hunting for truffles buried in briefs." (internal quotation marks omitted)). But even undertaking a review of that submission indicates Dr. Onysko characterized each alleged adverse employment action as distinct from the others. *See* R. vol. 9 at 34 ("It is indisputable that the remainder of the 87 'events,' . . . which [Dr. Onysko] enumerated to the Administrative Law Judge, remain as [Dr. Onysko] asserted *instances* of alleged [DEQ] animus and retaliation against [him] during [his] protected activities." (emphasis added)). We therefore affirm the Board's conclusion that 81 of the 87 employment actions Dr. Onysko challenged were time-barred and properly excluded from consideration as instances of unlawful retaliation.

Likewise, as he did before the ALJ and the Board, Dr. Onysko strenuously argues his supervisors and the state investigators were all incorrect in their findings

8

he had engaged in abusive conduct ultimately justifying his termination.[5]  But these arguments are of no moment.  "An articulated motivating reason is not converted into pretext merely because, with the benefit of hindsight, it turned out to be poor business judgment.  The test is good faith belief."  *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998) (internal citation omitted).  "In this regard, if [DEQ] believed [Dr. Onysko's supervisor's] allegations and terminated [Dr. Onysko] for that reason, such belief would not be pretextual even if the belief was later found to be erroneous."  *Id.*

Dr. Onysko's remaining arguments are similarly without merit.  He asserts the ALJ and two members of the Board were improperly biased against him because the ALJ attended Brigham Young University as an undergraduate and because two of the three Board members were members of the Federalist Society organization.  He argues the ALJ's college is relevant because some of his work was related to the Mormon church and that the Board members affiliation is relevant because the Federalist Society is a "secretive, anti-democracy" organization.  Aplt. Opening Br. at 32.  "However, a substantial showing of personal bias is required to disqualify a hearing officer or to obtain a ruling that [an administrative hearing] is unfair."

---

[5] Dr. Onysko also argues the ALJ erred in "striking" the declaration he submitted in opposition to the motion for summary decision.  Aplt. Opening Br. at 36.  But the ALJ did not strike his declaration.  Although the ALJ found that Dr. Onysko failed to sign his declaration under oath or penalty of perjury and failed to limit his declaration to matters within his personal knowledge, he also found that, "much more importantly, even if [the declaration] were in proper form, it contains nothing more than general allegations and nonspecific denials which do not directly address the facts [DEQ] contends are undisputed."  R. vol. 20 at 77–78.

*St. Anthony Hosp. v. U.S. Dep't of Health & Hum. Servs.*, 309 F.3d 680, 711 (10th Cir. 2002) (internal quotation marks omitted).  Dr. Onysko's aspersions toward the ALJ's college and the Board members' organizational affiliations, without more, do not amount to such a showing.

Dr. Onysko also asserts the Board "outrageously admitted the OSHA findings as record evidence against [his] whistleblower claims," Aplt. Opening Br. at 51, but the Board did not admit any such findings.  Rather, it merely recounted the procedural history of the action, noting the OSHA investigator dismissed Dr. Onysko's claims of retaliation before he requested a hearing from an ALJ.  *See* R. vol. 22 at 140.

Finally, Dr. Onysko faults the ALJ for denying him certain discovery.  Aplt. Opening Br. at 63–65.  But he fails to point with any specificity to *which* ruling by the ALJ he seeks to challenge and why that ruling is erroneous, so we consider this issue forfeited.  *See Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point." (internal quotation marks and alterations omitted)).  In any event, the discovery sought appears related to adverse employment actions that the ALJ concluded were time-barred, so any alleged error in this respect is harmless.  *See Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993) ("The harmless error rule applies to judicial review of administrative

proceedings, and errors in such administrative proceedings will not require reversal unless Plaintiffs can show they were prejudiced.").

## CONCLUSION

We affirm the final decision and order of the Board.

Entered for the Court

Gregory A. Phillips
Circuit Judge